CALLAWAY COUNTY SAVINGS BANK, Defendant in Error, *v.* JOHN H. TERRY ET AL., Plaintiffs in Error.

#### December 12, 1882.

1. PRINCIPAL AND SURETY — PRACTICE. — A surety on a note secured by a mortgage cannot compel the holder to exhaust the other security before proceeding against him.

2. —— SUBROGATION. — A surety who pays his principal's debt is subrogated to the creditor's liens and rights of action against the principal debtor's property.

ERROR to the St. Louis Circuit Court, THAYER, J.
*Affirmed.*

G. M. Stewart and Paul Bakewell, for the plaintiffs in error.

Fisher & Rowell and L. Frank Ottofy, for the defendant in error.

Bakewell, J., delivered the opinion of the court.

This was an action to recover from defendants an instalment of interest due on notes executed by Samuel H. Terry and wife, and secured by deed of trust on lands in Callaway County.

Defendants, who were sureties, in their answer pray that plaintiff, as owner of the deed of trust securing the principal and interest, be compelled first to exhaust the security, and that defendants be held only for the residue.

The cause was submitted to the court, a jury being waived; and upon the facts there was a finding and judgment for plaintiffs.

The facts are agreed to, and are as follows : —

On March 3, 1875, Samuel H. Terry and Helen, his wife, conveyed to Hough as trustee certain lands in Missouri to secure a principal note of $5,000, payable three years after date, and six semi-annual interest notes of $250, each payable at intervals of six months. All the notes bore interest at ten per cent after maturity, and were payable to the Life Association of America. The real estate described in the deed was sufficient security for the notes.

Defendants became sureties for the payment of these notes by a subsequent collateral undertaking, as follows :

" $1,476.                      St. Louis, March 21, 1878.

" Received from John H. Terry and Samuel S. Scott, fourteen hundred and seventy-six ($1,476) dollars by deed from J. H. Terry and wife to the Life Association of America, for lot 82×157 in city block 2362, as a payment on account of indebtedness of S. H. Terry to the Life Associa-

tion of America, secured by deed of trust on certain property in Callaway County, Mo., as per statement herewith, leaving a balance due thereon of five thousand one hundred and sixty-four $^{97}/_{100}$ dollars. The Life Association of America hereby agreeing on its part, that the time of payment of said balance shall be extended for a term of three years from the 22d of February, A. D., 1878, with interest at the rate of seven per cent per annum, payable semiannually on the 30th days of March and September, in each year, until 22d of February, 1881." " The said John H. Terry and Samuel S. Scott hereby guarantee the prompt payment of the interest and principal of said indebtedness as herein provided, and that the extension hereby is in nowise to operate either as a bar or waiver of any of the provisions or terms of said deed of trust, but that all its provisions shall remain in full force and effect, except as to the rate of interest upon said indebtedness, it being expressly understood and agreed that the Life Association of America fully reserves the right of foreclosure for non-payment of interest."

The principal note, and the last interest note, on which there was a credit of $206.20, were, on May 14, 1879, assigned for value, together with the deed of trust securing them, to plaintiff. The amount claimed for interest is due. Neither Samuel H. Terry nor his wife have any other property subject to execution than that described in the deed of trust. The deed of trust contains a provision that, if any of the notes be not paid at maturity, then all shall become due.

It is provided by statute in this state, that a surety for the payment of money may, after an action has accrued, require in writing the person having such right of action to begin suit at once against all the parties liable ; and if such suit is not begun within thirty days after such notice, the surety is discharged. Rev. Stats., sects. 3896, 3897. And

the later equity doctrine is, that a surety may, after the debt matures, and before he pays it, compel the creditor to collect the debt from the principal as being indemnified against loss for a fruitless suit. There are many cases that hold, that without any statute, if the principal is solvent and the surety requests the creditor to sue the principal, and the creditor does not do so, the surety is discharged if the principal becomes insolvent, and this on the ground that the creditor is in conscience bound to get payment if possible from the person primarily liable. " But," says Mr. Brandt, in his treaty on Suretyship, where the cases are cited in the note (sect. 208), " the great majority of cases hold, in the absence of any statutory provision, that, if after the debt is due, the surety request the creditor to sue the principal, who is then solvent, and the creditor fails to do so, and the principal afterwards becomes insolvent, the surety is not discharged. The ground upon which these decisions rest is, that the principal and surety are both equally bound to the creditor, who may have taken a surety in order that he might not have to sue the principal. If the surety desires a suit brought against the principal, he may himself pay the debt, and immediately sue the principal."

But that is not the precise question in this case. The new matter in the answer presents no defence whatever, unless upon the principal, that a surety can compel the principal to exhaust liens and collaterals before he can look to the personal liability of the sureties. And we have no doubt that the creditor is free to take his choice, and may enforce his debt without enforcing his lien, if he sees proper. The surety is protected. He can be subrogated to the securities of the creditor when he has performed his contract. In the present case, it was the duty of the surety to pay the note, and then he would have had a right to avail himself of all the liens, rights, and advantages of the creditor

against the principal debtor and his property.  *Watson* v. *Sutherland*, 1 Tenn. Ch. 208.  So, it is held that the payee of a promissory note signed by a principal and surety and secured by a mortgage on land of the principal, may maintain an action on the note against the surety without first exhausting the security.  125 Mass. 400.  And the same doctrine is held everywhere, so far as we know.  " That a creditor is not bound to apply his securities or resort to the principal in the first instance, is a conceded result of the precedents and practice of courts of equity here and elsewhere," said Chief Justice Gibson fifty years ago, in *Gaddis* v. *Hawk* (1 Watts, 280, 287).  If there has been an innovation, in some states, as to the obligation to resort to the principal, — and the doctrine that he must so resort, is undoubtedly an innovation, and the rule was not so amongst the civilians (*Louisiana State Bank* v. *Ledoux*, 3 La. An. 670), — we are aware of no change as to the rule in regard to exhausting the securities.  Undoubtedly, the equitable rule, where there is security given on the property of the principal debtor, and also on that of the sureties, throws the burden on that of the principal debtor, and exhausts that fund in exoneration of the estate of the surety, as is said by Chief Justice Sherwood, in *Wilcox* v. *Todd* (64 Mo. 388).  But that case is no authority for the proposition that, where there is real estate security to secure notes for principal and interest, one who has become surety for the payment of these notes, cannot be sued upon the interest note until the mortgage is foreclosed, where the creditor has a right to foreclose for non-payment of interest.  It has not been so held in Missouri in any case, so far as we know.

We see no ground for reversing the judgment.  The surety should fulfil his obligation.  If he does so, he may himself have all the security given by the mortgage.  The judgment is affirmed.  All the judges concur.